JACINTO RAMOS MARRERO, demandante y recurrente, *v.* LUIS A. PAGÁN ASENCIO, ETC., demandados y recurridos.

*Número:* R-82-362          *Resuelto:* 26 de abril de 1983

*Juan M. Ponce Fantauzzi,* abogado del recurrente; *Luis C. Soto-mayor,* abogado del recurrido.

## SENTENCIA

El tribunal de instancia dictó sentencia en la que declaró sin lugar la reclamación de daños sufridos por el recurrente como consecuencia de un accidente de tránsito que ocurrió en la Carr. Núm. 2 cuando el recurrente conducía su motocicleta por dicha carretera en dirección de Manatí hacia Arecibo. Surge de la exposición narrativa de la prueba que, además de ambas partes, declaró un testigo presencial de los hechos cuyo testimonio puede considerarse

desinteresado. Dicho testigo declaró que el recurrente conducía la motocicleta por la carretera principal a una velocidad de 30 a 35 millas por hora; que vio al recurrido parado en la vía secundaria, la cual entra a la Carr. Núm. 2 y que éste "de momento se tiró a cruzar".

El recurrente tenía a su favor el derecho de paso, lo cual imponía al recurrido la obligación de tomar la precaución necesaria para que al invadir el derecho de aquél, evitara con su acto el accidente. No lo hizo y por eso incurrió en responsabilidad.

Se dicta sentencia en la que se revoca la recurrida y se devuelve el caso al tribunal de instancia para que determine los daños sufridos por el recurrente.

Así lo pronunció, manda el Tribunal y certifica la Secretaria. El Juez Asociado Señor Rebollo López emitió opinión concurrente.

(*Fdo.*) Lady Alfonso de Cumpiano
*Secretaria General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

El jueves 2 de abril de 1975, en el Km. 57.9 de la Carr. Est. Núm. 2 —jurisdicción del honorable Tribunal Superior de Puerto Rico, Sala de Arecibo— aproximadamente a las 7:00 a.m., ocurrió un accidente entre una motocicleta conducida por el demandante recurrente Jacinto Ramos Marrero, *el cual discurría, en dirección de Manatí hacia Arecibo, por la referida vía principal o preferente,* y un vehículo de motor conducido por el demandado recurrido Luis A. Pagán Asencio, *el cual entraba, en forma perpendicular, a dicha Carr. Núm. 2 desde un camino privado o vía accesoria.* El tramo de la referida vía principal donde ocurrió el accidente era recto y al momento de la ocurrencia del mismo el día estaba claro.

El demandante recurrente, quien a la fecha del accidente tenía 28 años de edad y trabajaba como supervisor en una factoría devengando un salario semanal de $175, sufrió, como consecuencia del accidente: la fractura del dedo grande del pie derecho, el cual quedó un tanto deforme; la fractura, por compresión, de la vértebra lumbar L-3; la fractura de la pelvis; la fractura del cóccix; la fractura de tres costillas; una cicatriz mutilante, de bordes irregulares y gruesos en su rostro, que corre desde el arco de la ceja izquierda hasta el labio superior izquierdo; la pérdida, como consecuencia de la fractura de la vértebra, de una pulgada de estatura; la reclusión forzosa en un hospital por espacio de dos meses y medio; y finalmente fue declarado totalmente incapacitado por la Administración del Seguro Social federal como consecuencia del accidente sufrido.

La vista del caso, ante el tribunal de instancia, se celebró el día 5 de abril de 1977. *Pasados cinco años de haber quedado sometido el caso*, dicho tribunal dictó sentencia mediante la cual declaró *sin lugar* la demanda radicada, en vista de que determinó, como cuestión de hecho, que "el accidente ocurrió por la exclusiva negligencia del propio demandante".

Por haber acudido ante este Tribunal la parte demandante, imputándole error al tribunal de instancia al así resolver, ordenamos la exposición narrativa de la prueba a los fines de poder evaluar adecuada y responsablemente el recurso de revisión instado. Una vez elevada y examinada la misma —la preparación de la cual se demoró por razón de la renuncia de la judicatura del juez de instancia que había intervenido en el caso— emitimos orden, dirigida a la parte demandada recurrida, para que mostrara causa por la cual este Tribunal no debía revocar la sentencia dictada por el tribunal de instancia. Dicha parte ha comparecido. Fieles a nuestra posición de que este Tribunal tiene la obligación de orientar a la profesión y el de explicar, hasta donde ello sea humana y jurídicamente posible, el porqué de

nuestras determinaciones, (¹) pasamos a expresar las razones por las cuales concurrimos en el presente caso.

I

Antes de entrar propiamente en materia, deseamos expresar que estamos conscientes del hecho de que nuestros compañeros jueces del tribunal de primera instancia laboran día a día bajo condiciones que no son las óptimas, ello debido, principalmente, al gran número de casos asignados a cada uno de ellos y a la poca ayuda —humana y material— con que cuentan para realizar su ardua labor. Igualmente, estamos conscientes de que dentro de ese gran cúmulo de trabajo, hay casos que presentan complejas cuestiones de hecho y de derecho que requieren, de parte de los referidos jueces, un profundo y detenido estudio, que hace virtualmente imposible el que los jueces de instancia cumplan con las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico, en lo referente al período en que el juez viene "obligado" a resolver los casos, una vez éstos quedan sometidos. (²)

*El mucho trabajo, la complejidad de las cuestiones a resolver y la poca o inexistente ayuda, sin embargo, no pueden justificar, en ningún caso, un período como el transcurrido en el caso que nos ocupa;* sobre todo cuando consideramos que el presente caso no presenta complicadas cuestiones de hecho y de derecho. Nuestros jueces de instancia deben evitar que situaciones como la ocurrida en el presente caso se repitan.

---

(¹) Véase, opinión concurrente del 28 de marzo de 1983, en *Escobar Galarza* v. *Banuchi Pons,* 114 D.P.R. 138 (1983).

(²) La Regla 12 provee que los tribunales de instancia deberán resolver "[l]os casos contenciosos vistos en sus méritos . . . dentro de *cuarenta y cinco* (45) días . . . contados a partir de la fecha en que el asunto quedó sometido al tribunal, *excepto cuando* la naturaleza del asunto o alguna causa extraordinaria haga necesario un término mayor. . .". (Énfasis suplido.) 4 L.P.R.A. Ap. II-A.

## II

Reiteradamente hemos resuelto que merecen gran consideración, respeto y deferencia las determinaciones de hecho a que llega un tribunal de instancia, ello debido principalmente a que es el juez de instancia el que escucha y ve declarar a los testigos y por lo tanto tiene el beneficio de poder apreciar su conducta o comportamiento en la silla testifical (*demeanor*), *Ramos Acosta* v. *Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982); *beneficio o ventaja sobre todo presente cuando el caso es resuelto dentro de un término razonable, después que el mismo queda sometido ante la consideración del juzgador de los hechos, pero que va desapareciendo con el pasar del tiempo, por cuanto es prácticamente imposible que un juez —ni ninguna otra persona— pueda recordar la forma de declarar o el comportamiento de los testigos al cabo de dos, tres o cuatro años de haberse celebrado el proceso.*

Dicha doctrina —la de respeto a las determinaciones de hecho del tribunal de instancia— "puede convertirse en espada de dos filos. Si los jueces cumplen su deber a cabalidad resultará un poderoso auxiliar en la correcta resolución de los pleitos, pero si por el contrario no se percatan de su delicada misión, la doctrina puede convertirse en instrumento de opresión e injusticia". *Torres* v. *González*, 63 D.P.R. 964, 972 (1944).

Es por ello que "[e]l arbitrio del juzgador de hechos es respetable, mas no es absoluto", y que "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales* v. *De Jesús Toro*, 107 D.P.R. 826, 829 (1978).

Un examen sereno, desapasionado y minucioso de la prueba que desfiló ante el tribunal de instancia —a través de la exposición narrativa de la prueba que por estipulación de las partes fuera certificada— nos convence de que la determinación a que llegara el tribunal de instancia, a los efectos de que el accidente ocurrió debido a la exclusiva

negligencia del propio demandante, no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y, por lo tanto, la misma no puede prevalecer. *Sanabria* v. *Sucn. González*, 82 D.P.R. 885 (1961).

Examinemos dicha prueba: La prueba de la parte demandante, *en lo referente a la ocurrencia del accidente*, consistió del testimonio oral del propio demandante *y de un testigo ocular del accidente*. La misma, *en síntesis*, fue a los efectos de que el demandante, quien transcurría en su motora como de veinticinco a treinta millas por hora en dirección de Barceloneta a Manatí por la Carr. Est. Núm. 2 —la cual en dicho tramo es una recta y consta de cuatro carriles— pudo observar a su derecha a un automóvil, mientras éste todavía se encontraba en una "carretera" accesoria a la referida vía principal, cuando se acercaba en forma perpendicular a la misma; que este vehículo *entró súbitamente* en dicha Carr. Núm. 2; que al ocurrir ello, el demandante, quien no tuvo tiempo para detener su motora, con el propósito de evitar el accidente, cambió del carril de la derecha al carril del centro, ocurriendo siempre, no obstante la maniobra realizada por el demandante, el accidente; por cuanto el automóvil, con su parte del frente, invadió dicho carril central; que la motora impactó el vehículo por el lado izquierdo del mismo —bien cerca del *bumper* delantero— impacto que causó que el demandante "volara" por encima del auto, cayendo al pavimento.

El demandado por su parte —persona que admitió "que se había hecho una operación en los ojos para corregir las figuras que él veía", y que "antes de hacerse esa operación él era un riesgo en las carreteras y por eso no guiaba, pero que ya no era un riesgo"— declaró que él salía del camino o carretera que provee acceso a la Fábrica Casera en donde había dejado a su esposa; que se detuvo en la entrada a la Carr. Núm. 2, que miró hacia el lado izquierdo([3]) y todos los

---

([3]) Dirección de donde provenía el demandante.

autos estaban detenidos dándole paso a él; que miró hacia el lado derecho y vio un solo auto que venía lejos; pensó que le daba tiempo a cruzar e inició la marcha; que se da cuenta, entonces, que el auto que viene del lado derecho viene muy ligero por lo que él se detiene en el carril del centro; que en ese momento mira a la izquierda y ve la motora del demandante como a un hectómetro de distancia; que se quedó allí a esperar el cantazo; *que la motora, en lugar de reducir, aceleró la marcha*; que el impacto fue por el lado izquierdo de su vehículo, bien cerca del *bumper*, "volando" el demandante por encima de su vehículo; que lo único que dijo el demandante, después del accidente, fue "este viejo me ha matado".

Varios hechos nos llaman poderosamente la atención: En primer lugar, el que transitaba por la vía principal o preferente era el demandante; el demandado discurría por un camino privado o carretera accesoria con el propósito de ganar acceso a la vía principal; el demandado tenía el deber de cederle el paso a cualquier vehículo que se aproximara por dicha vía principal, 9 L.P.R.A. sec. 951; en otras palabras, al demandante, aun cuando no en forma absoluta, le correspondía el derecho de paso. Dicho derecho debe ser aplicado en forma rigurosa. J. Santos Briz, *El Derecho de Daños*, Madrid, Ed. Revista de Derecho Privado, 1963, pág. 339.

En segundo lugar, el tribunal de instancia tuvo ante sí el testimonio oral de *tres testigos:* dos de ellos, esto es el demandante y el demandado, cuyas declaraciones son contradictorias entre sí, ello por razones obvias. El tercer testigo, aun cuando admitió que conocía levemente al demandante, se puede catalogar como desinteresado. Su testimonio no fue desacreditado; en su consecuencia, el mismo merece gran peso. *Rivera* v. *Central Pasto Viejo, Inc.*, 44 D.P.R. 244 (1932).

En tercer lugar, resulta difícil, sino imposible, el creer la versión de los hechos que narra el demandado: declara no

haber visto al demandante al mirar originalmente hacia su izquierda, ello a pesar de que la carretera era recta y el día estaba claro; testifica que el demandante al ver su automóvil detenido en el centro de la carretera, en lugar de reducir la velocidad, continúa aumentando la misma hasta el momento del impacto. Ello resulta contrario a la conducta normal y ordinaria de un ser humano; por cuanto creer la versión del demandado a esos efectos es llegar a la conclusión de que el demandante actuaba como un suicida el día de los hechos.

Por último, no nos deja de impactar la admisión del demandado de que él, antes de una operación de la vista a la que fue sometido, constituía un peligro en la carretera, por no poder distinguir bien las figuras; ello causa, cuando menos, duda respecto a si el día del accidente su visión era o no defectuosa; hecho que podría ser la explicación de no haber visto la motora acercarse antes de disponerse a entrar a la citada carretera.

En resumen, la versión que brinda el demandante, y el testigo desinteresado, sobre cómo ocurrieron los hechos, en nuestro criterio representa el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara en el presente caso. *Sanabria* v. *Sucn. González,* supra.

Se impone, en su consecuencia, la revocación de la sentencia dictada por el tribunal de instancia y la devolución del caso a dicho foro para que sea ese tribunal, luego que la parte demandante desfile prueba al efecto, el que evalúe los daños sufridos por el demandante. (4)

---

(4) Estamos conscientes del hecho de que dicha prueba deberá ser evaluada por un juez distinto al que participó originalmente en el caso por razón de la renuncia de la judicatura de este último. Entendemos, sin embargo, que ello es lo más apropiado, ya que la exposición narrativa de la prueba que se elevó en el presente caso no arroja suficiente luz como para que este Tribunal evalúe dichos daños responsablemente.